[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner brings this petition for a writ of habeas corpus alleging that his criminal trial attorney, M. Donald Cardwell, was ineffective in assisting him in that he (1) failed to question the complainant as to the authenticity of her statement to the police; (2) failed to consult with the petitioner concerning trial strategy; (3) failed to argue to the CT Page 6629 jury that the semen examined could have been from other than the petitioner; (4) failed to move for dismissal for lack of a speedy trial; (5) failed to inform the petitioner of the charges against him; (6) failed to subpoena defense witnesses; (7) failed to adequately cross-examine the complainant's doctor; (8) failed to discus the advantages and disadvantages of the testimony of the petitioner with him; and (9) failed to subpoena Officer Paul Zodda to refute the charges.
The petitioner was arrested and convicted after a trial to a jury for an event which was alleged to have occurred during the evening hours of May 17 and into the early morning hours of May 18, 1991 for the crime of kidnapping in the first degree and three (3) counts of sexual assault in the first degree.
The petitioner who desired to try his own matter before the habeas court was assigned the special public defender, Thomas Conroy, who had been appointed to represent him, as back-up counsel to assist him with subpoenas and legal research and to question the petitioner as a witness. Police Officer Paul Zodda, who because of injuries, could not be a witness at the criminal trial testified that he had no memory of the event other than his report, Petitioner's Exhibit 10. This same report had been admitted in his criminal trial by the agreement of counsel because of the unavailability of Zodda. Police Officer William Virneile brought the last time sheet of Detective Ronald Faggiani before his death, Petitioner's Exhibit 4. Det. Faggiani had prepared the voluntary statement of the victim on June 5, 1991.Petitioner's Exhibit 7. Attorney Cardwell was questioned about the sequence and his strategy in representing the petitioner on his criminal trial. He recalls having been asked to represent him by the petitioner's nephew, Leroy Jaffett, who also paid him. The strategy in the case was that the two were doing drugs to get high and had consensual sex. Because the petitioner had two (2) serious felonies on his record Cardwell did not want him to testify. However the petitioner was denying any sexual relations and wanted to testify but as the evidence came in he made the decision not to testify. Cardwell did obtain a computation of the excludable time in connection with the petitioner's filing of a speedy trial claim and determined that the trial date given was two months prior to the effective filing of such a claim. SeePetitioner's Exhibit 1.
The petitioner called himself and basically testified that his attorney failed to discuss the case with him. An examination CT Page 6630 of the criminal trial transcript demonstrates otherwise. The petitioner constantly addressed the court on witnesses' testimony or what they should have been asked requiring a response from his attorney. In fact throughout the defense case he intimated that he was going to be the last defense witness and when his time came decided he wouldn't testify. The State required the judge to canvas him whether this was a decision made by him and whether he was satisfied with his attorney's representation. SeePetitioner's Exhibit 2, pgs. 600-605. His responses were that he made the decision not to testify and that he believed his attorney up to the end of the evidence was great.
Lt. Jose Lopez was called by the petitioner. He had been the supervising officer of Det. Ronald Faggiani when he had taken the victim's statement (Petitioner's Exhibit 7). He recognized Faggiani's signature and his own. He was not present during the taking of the statement which is dated May 29, 1991 but did recognize his own signature as having taken the victim's oath on June 5, 1991. He doesn't recall how many times the victim came in. He does recognize the last time sheet of Faggiani for the week ending July 13, 1991 (Petitioner's Exhibit 4). His death was a shock because he hadn't demonstrated being sick. In fact the day that he died in his sleep he had called him at 3:00 a.m. to come in to work and he declined.
The initial date of evidence was December 7, 1998 and Attorney Conroy was present to assist him in the subpoena of his witnesses. On February 18, 1999 at 2:00 p. m. he requested another day to subpoena Leroy Jaffett, Gloria Cameron, Carol Faggiani, State's Attorney James Thomas and Assistant State's Attorney Joan Alexander. None of these witnesses had been called nor shown to have been unavailable at his criminal trial. No claim was made that any one of them had newly discovered evidence. At the request of the court the petitioner made an offer of proof that his nephew, Leroy Jaffett, would testify that Cardwell had shown displeasure at the beginning of his trial because he had received but half of his agreed fee; that Thomas and Alexander were conspiring against him because of prosecutions of him by Thomas previously; that Carol Faggiani would have information as to the physical condition of her husband, Det. Ronald Faggiani prior to his death; and that Gloria Cameron would have some relevant testimony. The court denied the request for another day to call such witnesses.
A successful petitioner must show that there is reasonable CT Page 6631 probability that but for counsel's unprofessional errors, the result of the proceedings would have been different. Copas v.Commissioner, 234 Conn. 139 (1995); Strickland v. Washington,466 U.S. 668, 694. The petitioner has failed to prove counsel's representation fell below an objective standard of reasonableness. Aillon v. Meachum, 211 Conn. 352, 359. Counsel's trial strategy was obvious in the manner in which he cross-examined the complainant. She was a drug addict who would do anything to obtain drugs and did engage in sexual activity with the petitioner to obtain the use of his drugs. Because of her addiction she was not to be believed in her complaint when she had given five different versions of the events of the evening and morning hours of her socializing with the petitioner starting with the first version given to the reporting officer, Paul Zodda. Because Zodda was unavailable as a witness for the petitioner's criminal trial there was agreement to introduce his incident report in lieu of his testimony. See Petitioner'sExhibit 10. That report included her denial of a sexual assault. Counsel's argument included the same vigorous challenge to the complainant's credibility including the fact that the sperm found could have been from the sexual encounter with her boyfriend the day before. Because of the difficulties inherent in making an evaluation of counsel's performance from hindsight, the court must indulge a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance and require the petitioner to overcome the presumption that, under the circumstances facing counsel, his performance might be considered sound strategy. Strickland v. Washington, supra, 688. The petitioner has failed to overcome that presumption. The jury chose to believe the complainant's testimony of the fear of the petitioner she had to submit to his sexual assaults rising to the degree of terror to escape from his apartment and seek help from others while unclothed.
Nor has the petitioner produced anything that would warrant this court in believing that in a new trial there is reasonable probability that a different result would occur. The petitioner has merely brought before this court the same evidence presented in his criminal trial and focused on why the complainant should be discredited.
For the above reasons the petition is denied.
Thomas H. Corrigan Judge Trial Referee CT Page 6632